IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL CHAMBERS,**<br>            **Plaintiff,** | **CIVIL ACTION** |
| v. | |
| **COMMONWEALTH OF PENNSYLVANIA, et al.,**<br>            **Defendants.** | **NO. 19-2867** |

## MEMORANDUM OPINION

Plaintiff Michael Chambers alleges that Defendants the Commonwealth of Pennsylvania and the Pennsylvania State Police ("PSP") unlawfully retaliated against him for participating in investigations and filing complaints related to purported discriminatory employment practices. He brings suit against Defendants pursuant to Title VII, 42 U.S.C. § 2000e, and the Pennsylvania Human Relations Act ("PHRA"), 42 Pa. Stat. § 951. He also raises retaliation claims against six individual PSP officers pursuant to 42 U.S.C. § 1981. All Defendants move for summary judgment on the claims against them.

### I.    FACTUAL BACKGROUND

Plaintiff Michael Chambers was hired by the PSP in 1993. Although now retired, while employed, Plaintiff participated, as a witness or complainant, in numerous investigations conducted by the PSP's Equal Employment Office ("EEO"), an internal office for handling employment disputes housed within the Equity and Inclusion Office ("EIO"). Twice, Plaintiff served as a witness, first in 2015 in support of then-Lieutenant Gary Dance, who alleged race discrimination. The second time, in June 2016, he was again a witness in an EEO complaint filed by Dance, this time against another Lieutenant for making an anti-Semitic joke during an EEO training.

1

Plaintiff was promoted three times during his career, most recently in 2012, when he was promoted to Sergeant—but after that, even though he was recommended to move to the next position in the chain of command, he was never promoted to Lieutenant.  He contends the reason he was not promoted was because of his participation in the EEO proceedings.  On February 6, 2017 he filed an EEO complaint of his own making that allegation.  He pointed to six rounds of promotions in which he was overlooked that occurred between when he was first a witness in an EEO investigation and when he filed the complaint.  Five days after the first complaint was filed, on February 11, 2017, his supervisor, Major Maynard Gray, declined to recommend Plaintiff for a promotion, and Plaintiff was again passed over.

Plaintiff further asserts that, one week after he filed the complaint, in retaliation for his doing so, Defendant Lisa Christie (Deputy Commissioner of Administration and Professional Responsibility) scheduled him for a random drug test, despite the fact that he had never been subjected to a drug screening previously.  Evidently, the drug test did not happen.

Additionally, according to Plaintiff, in March 2017, Defendant William Brown, Christie's executive officer, surveilled him on Christie's orders.  The context of this assertion is as follows: Plaintiff and fiancé, another PSP officer, were assisting in examining cadet applicants.  In the midst of their doing so, Brown accused Plaintiff of violating a "nepotism policy" because he was working with his fiancé.  Brown then told Christie about the "violation" and also threatened to text human resources.  Later that day, Brown talked to Plaintiff about the EEO complaint.  Both Brown and Plaintiff acknowledge that the conversation occurred—but they diverge on the details.  Plaintiff says Brown raised the complaint and knew about it before talking to him. Brown says, quite to the contrary, he learned about if for the first time from Plaintiff in that Plaintiff accused him of retaliating because of the "lawsuit against the department, . . . against

2

your boss."

On March 14, 2017, Plaintiff filed another EEO complaint (which was subsequently consolidated with his still-pending first complaint) documenting the alleged attempted drug testing and surveillance during the cadet examinations. And, on March 16, 2017, Plaintiff filed a Complaint with the federal Equal Employment Opportunities Commission ("EEOC"), which he simultaneously filed with the Pennsylvania Human Relations Commission ("PHRC"), discussing the times he was denied promotion in 2016 and 2017.

Around the same time, in March 2017, Plaintiff's Commander recommended him for promotion to Major Gray. Major Gray ultimately recommended three Sergeants for promotion to Lieutenant, including Plaintiff as his third choice. On June 17, 2017, fifteen Sergeants were promoted to Lieutenant, none of whom were recommended by Gray.

In July 2017, Plaintiff received notice from Defendant Thomas Tran, the Commander of the EEO who directly managed investigations, that the EEO Office concluded their investigation into his consolidated complaint and found no retaliation. That November, Plaintiff filed another complaint with the EEO, alleging that the failure to promote him in June was retaliation for "identifying discriminatory promotional practices and, filing an EEO against the PSP for same." In December, Plaintiff filed a grievance pursuant to the PSP's Collective Bargaining Agreement.

On January 5, 2018, Major Gray recommended four Sergeants for promotion and included Plaintiff as his fourth choice. Along with fourteen others, Gray's first and second choices were promoted to Lieutenant the following month. Also in that round of promotions, Brown was elevated from Lieutenant to Captain as well as to be the director of the PSP's Equity and Inclusion Office which houses the EEO.

Between February 21 and February 24, 2018, Plaintiff filed four more EEO complaints,

3

alleging that the promotion of Brown (against whom Plaintiff has filed previous complaints), the failure to promote Plaintiff, and the decision to promote an allegedly less qualified officer over Plaintiff were retaliation for his EEO complaints and grievances.  At the same time, he filed two more grievances pursuant to the Collective Bargaining Agreement.  Finally, on February 26, 2018, Tran sent Plaintiff notice that the EEO Office concluded their investigation into his second complaint and found no retaliation.

In March of 2018, Plaintiff retired from the PSP.  Since retiring, Plaintiff filed a Second EEOC Complaint on August 22, 2018, regarding the February promotions.  Then, on October 22, 2018, he filed a Third EEOC Complaint regarding the promotion of Brown, "an employee [he] filed multiple internal and external EEO complaints against . . . to be in charge of Respondents EEO section."

## II.  LEGAL STANDARD

Summary judgment is appropriate only if "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp*., 843 F.2d 139, 143 (3d Cir. 1988).  An issue is "genuine" if a reasonable jury could possibly hold in the non-moving party's favor with regard to it.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A fact is "material" if it could affect the result of suit under governing law. *Id.* at 248.  In evaluating a summary judgment motion, all facts must be viewed in the light most favorable to the nonmoving party, and any reasonable inferences must be made in their favor.  *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

## III.  DISCUSSION

Plaintiff contends that the numerous times he was denied a promotion, the attempted drug test, the surveillance of him at the cadet exam, the promotion of Brown to head the EIO and the

failure to properly investigate his internal EEO complaints were all in retaliation for his participation as a witness in the investigations into Dance's EEO complaints.

### A. Plaintiff Lacks a Remedy Against the Individual Defendants Under Section 1981

Plaintiff brings his claims against the individual Defendants pursuant to 28 U.S.C. § 1981, alleging that, by retaliatorily denying him promotions due to his involvement in EEO proceedings, they discriminated against him "with regard to the terms and conditions of his employment." Under Section 1981, all "persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ." 42 U.S.C. § 1981(a) (1991).

However, Section 1981 only applies to private actors. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 116 (3d Cir. 2009) (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 723, 735 (1989)). The individual Defendants are employees of the state. And, when individuals "abuse[] a power or position granted by the state," they are considered to be acting "under color of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006) (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 24 (3d Cir. 1997)). Thus, state employment decisions, like the ones of which Plaintiff complains, are made under the color of state law. *See Hafer v. Melo*, 502 U.S. 21, 27-28 (1991) ("The requirement of action under color of state law means that Hafer may be liable for discharging respondents precisely because of her authority as auditor general."). Section 1983, which governs state actors, rather than Section 1981, provides the *remedy* for individuals when state actors, acting under the color of law, deprive plaintiffs of their rights under Section 1981. *See McGovern*, 554 F.3d at 116. Because it is not disputed that the individual defendants were all, at the time of the alleged retaliatory non-promotion,

employees of the PSP acting as such, Plaintiff has no cause of action against them under Section 1981, and the individual Defendants are entitled to summary judgment on all of these claims. *See id.*

### B. Statute of Limitations Issues

The institutional Defendants argue that some of the alleged retaliatory actions are time-barred under Title VII and the PHRA. For PHRA claims to be timely, a plaintiff must file a complaint with the PHRC within 180 days of the alleged adverse action. 43 Pa. Cons. Stat. § 959(h) (1997); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997). For his Title VII claims, the EEOC complaint must be filed within 300 days of the action. 42 U.S.C. § 2000e-5(e)(1) (2009); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).

Plaintiff filed his first charge with the EEOC and PHRC on February 13, 2017. In it, he discusses the failure to promote him on February 13, 2016; April 23, 2016; August 13, 2016; December 31, 2016; and February 11, 2017. Under the 300-day time limit on Title VII claims, only the April, August, December, and February 2017 allegations are timely; because of the 180-day time limit on PHRA claims, only the December and February 2017 claims are timely.

Plaintiff filed his second charge with the EEOC and PHRC on August 22, 2018, discussing the failure to promote him on February 10, 2018. While actionable under Title VII, this event is time-barred under the PHRA. Finally, Plaintiff filed his third charge on October 22, 2018, discussing the February 24, 2018 promotions and promotion of Brown as an adverse action. While actionable under Title VII, it is not timely under the PHRA.

Plaintiff argues that all of the above-mentioned barred claims are, in fact, not untimely because the "continuing violation doctrine" allows his claims to be aggregated as a pattern of action. However, the continuing violation doctrine only applies to hostile work environment

6

claims, which "involve[] repeated conduct" by "[t]heir very nature." *Morgan*, 536 U.S. at 115. This stands in contrast to "discrete discriminatory acts," which, for statute of limitations purposes, are viewed as separate incidents that need to each be alleged. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (citing *Morgan*, 536 U.S. at 114). Failure to promote is a discrete act. *Id.* In order for such an act to be actionable, a potential plaintiff must have timely filed charges with the EEOC or PHRC regarding the specific act in question—filing charges regarding related acts is not enough. *See id.* (*citing Morgan*, 536 U.S. at 113). The continuing violation doctrine does not encompass these discrete discriminatory acts. *See Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 483 (3d Cir. 1997), *abrogation on other grounds recognized by Mandel*, 706 F.3d at 166 (finding that the district court erred when determining that a "failure to promote and train claim was not time barred because the continuing violation theory applied to it"). Summary judgment shall be granted against Plaintiff to the extent he seeks recovery based on those time-barred adverse actions.

Plaintiff faces an additional potential statute of limitations issue: none of his EEOC filings mention the June 17, 2017 round of promotions, nor the alleged attempted drug test, the surveillance, and the failure to properly investigate the internal EEO complaints. However, a plaintiff may still sue for an act not included in the EEOC charge if the act is included in "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. . . ." *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976)). Put another way, "a district court may assume jurisdiction over additional charges if they are reasonably within the scope of the complainant's original charges and if a reasonable investigation by the EEOC would have encompassed the new claims." *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208,

7

1212 (3d Cir. 1984). However, this does not permit Plaintiff to simply "bypass the administrative process." *Webb v. City of Philadelphia*, 562 F.3d 256, 262-63 (3d Cir. 2009) (internal quotation omitted). The purpose of the EEOC filing requirement is to begin the process of remedying discrimination: by giving notice to the employer and investigating for good cause. *Hicks*, 572 F.2d at 963 (citing *Ostapowicz*, 541 F.2d at 398).[1]

The inquiry thus is whether the EEOC's investigation reasonably would have included examination of the unmentioned claims. *Hicks*, 572 F.2d at 966. The scope of a reasonable investigation is judged only on the charge filed—not any information the plaintiff tells the investigators after filing the charge. *See id.* at 966-67. The question is not what *was* investigated, but what *should have been* investigated based on the charge; a plaintiff is not permitted to "greatly expand an investigation simply by alleging new and different facts when he was contacted by the Commission following his charge." *Id.*

Thus, turning first to the unmentioned June 2017 round of promotions: it is not clear from the record at what point the EEOC ended its investigation into Plaintiff's first EEOC Complaint, which was filed in March 2017. Taking all inferences in Plaintiff's favor, the EEOC could have been still investigating that Complaint, which alleged retaliatory failure to promote, when Plaintiff was once again denied a promotion. One can fairly expect that, in the course of investigating a failure to promote charge, the EEOC investigator would reasonably discover and inquire into the outcomes of later rounds of promotions. Thus, this "new retaliation claim may fairly be considered [an] explanation[] of the original charge. . . ." *Howze*, 750 F.2d at 1212 (internal citation and quotation omitted; alteration in original). In light of the unclear timeline of the investigation in the record and the facial similarity of the June 17 non-promotion to the

---

[1] This line of cases apply to the PHRA claims as well. *See Mandel*, 706 F.3d at 163.

8

previous non-promotions, summary judgment on this basis is not warranted.

However, the alleged attempted drug test, surveillance, and failure to properly investigate the internal EEO complaints do not so fare. None were mentioned in the charges to the EEOC and PHRC. Absent being told about them by Plaintiff, one would not reasonably expect an investigator to uncover these types of allegations from a charge that specifically and only discusses promotion. While retaliation for failure to promote due to filing EEO charges would require evaluation of the EEO charges Plaintiff filed, that would be only for purposes of confirming he engaged in a protected activity; there is no reason to believe the investigator would have reason to assess the *adequacy* of the EEO investigation. The only gesture Plaintiff makes towards inadequacy is mentioning in his charge that his fiancé and his fiancé's cadet examination partner were not interviewed by the EEO; this is not enough to require a reasonable investigator to undertake a separate investigation into the overall quality of the EEO's actions. Regarding the drug test, approximately ten percent of PSP employees are randomly drug tested every year. Even were the investigator to learn Plaintiff was drug tested, nothing from the charge would yield the investigator to believe that needed to be looked into as an independent retaliatory action. Finally, while the EEOC's investigation may reasonably have entailed interviewing Brown, there is no reason to believe an interview about the *failure to promote* and wrongful promotion claims would yield the uncovering of surveillance allegations. Plaintiff's three EEOC charges only deal with failure to promote. As such, all of his claims based on non-promotion allegations are time-barred, and summary judgment shall be granted against them.

### C. Plaintiff's Remaining Title VII and PHRA Claims

Thus, all that remains in this case are Plaintiff's claims based on his passed promotions on February 13, 2016; April 23, 2016; August 13, 2016; December 31, 2016; February 11, 2017;

9

June 17, 2017; and February 10, 2018; and the allegedly retaliatory promotion of Brown occurring on the last date.[2]

Absent a noticeable difference in their language, retaliation claims under Title VII and the PHRA are to be analyzed identically. *See, e.g.*, *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 327 (3d Cir. 2015). In cases where the plaintiff only has indirect evidence of retaliation, as here, the claims are adjudicated under the *McDonnell Douglas* framework, which proceeds in three stages. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (internal citations and quotations omitted). First, Plaintiff must make out a prima facie case, which requires showing:

> (1) [engagement in a] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.

*Id.* If Plaintiff makes these showings, the burden of production shifts to the Defendant to "present a legitimate, non-retaliatory reason for having taken the adverse action." *Id.* If such a reason is advanced, the burden shifts back to the plaintiff to demonstrate that "the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* "Although the burden of *production* of evidence shifts back and forth," Plaintiff always retains the ultimate burden of persuasion. *Id.* (emphasis added). For the purposes of this motion, Defendants do not dispute that Plaintiff engaged in protected activities and that failure to promote constitutes an adverse action.[3]

---

[2] Under the PHRA, the only remaining claims are for failure to promote on December 31, 2016; February 11, 2017; and June 17, 2017.

[3] Defendants make a handful of other arguments that do not carry the day. First, Defendants argue they are protected by sovereign immunity from the Title VII claims. But this is contrary to well-established Supreme Court precedent that sovereign immunity does not bar recovery in Title VII suits. *See, e.g.*, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 457 (1976).

10

1. Causation

Defendants argue that Plaintiff fails to meet prong three of the *McDonnell Douglas* framework, namely, that there is a "causal connection between the employee's protected activity and the employer's adverse action." *Daniels*, 776 F.3d at 193. Because causation "necessarily involves an inquiry into the motives of an employer," it is a "highly context-specific" question. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997). As an initial matter, Plaintiff must provide "some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted." *Daniels*, 776 F.3d at 196; *see also Johnson v. Phila. Hous. Auth.*, 218 F. Supp.3d 424, 436 (E.D. Pa. 2016). Once that threshold is met, the Third Circuit has held that a plaintiff can "demonstrate a link between protected activity and an employer's adverse action" by: (1) pointing to an "unusually suggestive" temporal proximity between the protected activity and adverse action, or (2) establishing that "the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Daniels*, 776 F.3d at 196 (internal citations and quotations omitted).

---

Defendants next argue that, because Plaintiff brought claims against the PSP, the Commonwealth is a redundant party and should be dismissed from the suit. However, none of the cited cases support dismissing a *state* because a state agency is a co-defendant. *See Douglas v. Univ. of Pgh.,* 2016 WL 695661, at *1 (W.D. Pa. Jan. 19, 2016), rpt. & rec. adopted, 2016 WL 693120 (W.D. Pa. Feb. 22, 2016) (dismissing a university's board of trustees as redundant because the university is also a party); *Davis v. New Jersey Dep't of Corr*., 2011 WL 5526081, at *4 (D.N.J. Nov. 14, 2011) (dismissing a prison as a redundant party because the state department overseeing prisons was also a party); *Klatch–Maynard v. Sugarloaf Twp*., 2008 WL 3992283, at *4 (M.D. Pa. Aug. 27, 2008) (dismissing a township's Board of Supervisors because the township itself is also a party). These cases deal with dismissing sub-units of a state agency when the agency is also a party, not the Commonwealth.

Finally, Defendants argue that because Plaintiff did not separate the Commonwealth from the PSP in the caption of his state court filing, he never intended to sue the Commonwealth. However, the caption in this Court identifies the Commonwealth as a party; and the Commonwealth has not argued that it was never served or otherwise not properly joined in this matter.

### i. Knowledge

The first question thus is whether Plaintiff has introduced evidence to establish that "individuals responsible for the adverse action" knew about his protective activity (*i.e.*, his participation in the EEO investigations and, later, the filing of his own EEO complaint) when they declined to promote him. *See Daniels*, 776 F.3d at 196; *Johnson*, 218 F. Supp.3d at 436. In the PSP, all final promotion decisions are made by Defendant Tyree Blocker, the Commissioner. However, he makes the decisions "collectively," with input from the Deputy Commissioners: during the relevant time period Christie (Deputy Commissioner of Administration and Professional Responsibility), Defendant William Horgas (then-Deputy Commissioner of Operations[4]), and Defendant Stephen Bucar (Deputy Commissioner of Staff).

Taking all inferences in Plaintiff's favor, the record suggests that the earliest time a decision-maker knew about Plaintiff's own EEO complaints is on February 6, 2017, when the first EEO complaint was filed with Christie's office; Christie sat down for an interview regarding the complaint one month later. As Blocker worked in concert with his Deputy Commissioners, including Christie, to make decisions, it can reasonably be inferred that Christie informed the team in charge of promotions about this complaint when they met for the next round of decisions.

As to Plaintiff's allegations that he was also retaliated against for his participation as a witness in two EEO investigations involving Plaintiff's coworkers (regarding Dance's racial discrimination allegations and the anti-Semitic comment made by a Lieutenant), there is no direct evidence that Blocker knew of this. Plaintiff alleges, however, that "[a]ll four [deputy] commissioners knew of Plaintiff's EEO filings and of the fact that he gave a statement that

---

[4] In 2017, Horgas was replaced as Deputy Commissioner of Operations by Robert Evanchick, who is not a party to this proceeding.

12

supported the complaints of race discrimination and retaliation made by then Lt. Dance." But Plaintiff cites to no evidence in the record supporting this allegation. Further—evidence that does exist in the record points the other way. Horgas directly denies any knowledge. And Christie stated that she did not learn about Plaintiff's participation in Dance's investigation until Plaintiff filed his February 6, 2017 complaint. Thus, there is no competent evidence that Blocker or any of the Deputy Commissioners knew about Plaintiff's involvement in these earlier complaints before that point. As evidence of knowledge is required, Plaintiff's involvement with the earlier EEO investigations cannot be considered an actionable protected activity for any adverse actions predating the filing of his first complaint. *See Daniels*, 776 F.3d at 196; *Johnson*, 218 F. Supp.3d at 436.

Defendants are thus entitled to summary judgment in their favor for the non-promotions occurring before February 6, 2017.[5]

### ii. Causal Connection

The only claims now remaining are the non-promotions on February 11, 2017; June 17, 2017; and February 10, 2018 (as well as the promotion of Brown on this date). Plaintiff must show a causal connection between his protected activity and the actions taken against him. Frequently, temporal proximity between attaining the knowledge and taking the adverse action can serve to establish this causation. While "mere passage of time is not legally conclusive proof against retaliation," *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) (internal quotations omitted), an unduly suggestive temporal proximity "is sufficient standing alone to create an inference of causality and defeat summary judgment," *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). Unduly suggestive proximity simply

---

[5] Specifically, claims based on his passed promotions occurring on December 6, 2014, June 6, 2015, January 16, 2016, April 23, 2016, August 13, 2016, and December 31, 2016 shall be dismissed.

13

requires a close-in-time connection; there is no hard line that conclusively determines whether or not the timing creates a sufficient inference. *Id.* at 233.

Courts have previously found unduly suggestive temporal proximity when the gap between the protected activity and adverse action was a matter of days. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (two days); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003) (ten days). But when it is a matter of years, it is less likely to qualify. *See Woodson*, 109 F.3d at 921 (two years); *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir.1997) (nineteen months). Ultimately, however, this is a fact-intensive determination—the same length of time may be unduly suggestive in one circumstance, but not in another. *Compare Fasold v. Justice*, 409 F.3d 178, 190 (3d Cir. 2005) (finding a three-month gap between the filing of an administrative claim and the denial of a grievance suggestive where the grievance investigator expressed irritation with the plaintiff's complaints) *with Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004), *superseded by statute on other grounds*, *as recognized in Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 185 (3d Cir. 2019) (finding two-month gap between the request for an accommodation and termination not unduly suggestive when there was no other evidence of causation).

Plaintiff filed his first EEO complaint on February 6, 2017, and promotions were announced just five days later, on February 11. Such close proximity between his action and his being denied a promotion could create a reasonable inference to the factfinder that the complaint may have been a factor. *See Jalil*, 873 F.2d at 708. On March 14, 2017, Plaintiff filed another EEO complaint, and two days later, his first EEOC complaint. Another round of promotions occurred roughly three months later, on June 17. Although the three-month gap is not as inherently suggestive as the five-day one, *see Leboon*, 503 F.3d at 232, Plaintiff's supervisor also

14

recommended him for a promotion this time, and he still did not receive one—which can support an inference that the timing is suggestive. Finally, Plaintiff filed an EEO complaint on November 7, 2017 and a union grievance on December 20, 2017. The final round of promotions before Plaintiff's retirement occurred less than two months later, on February 10, 2018. And once again, Plaintiff was recommended for a promotion but denied one—while Brown, against whom Plaintiff filed an EEO charge, was promoted. A reasonable factfinder could find this timing suggestive. *See Shellenberger*, 318 F.3d at 188.

This conclusion is strengthened by "circumstantial evidence of a pattern of antagonism following the protected conduct." *Kachmar*, 109 F.3d at 177 (internal quotations and citations omitted); *see also Robinson v. Se. Pa. Transp. Auth., Red Arrow Div.*, 982 F.2d 892, 895 (3d Cir. 1993) (providing that a "constant barrage of written and verbal warnings . . . , inaccurate point totalings, and disciplinary action, all of which occurred soon after plaintiff's initial complaints and continued until his discharge" can support causation). In evaluating a pattern of antagonism, the Third Circuit has instructed courts to consider "circumstances as a whole" and "any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Daniels*, 776 F.3d at 196. Under that rubric, it is appropriate to consider the full timeline of what occurred between when Plaintiff first engaged in a protected activity and when he suffered an adverse action.[6]

Thus, while the alleged attempts to drug test and surveil Plaintiff, and the alleged insufficient investigation of his EEO complaints cannot themselves serve as adverse actions due

---

[6] The record evinces some evidence of direct animus—or at least irritation—towards Plaintiff. Specifically, Plaintiff points to emails between non-party EEO employees sent shortly after Plaintiff filed his EEOC charge, in which one employee noted that Plaintiff still had an open EEO complaint when he filed his first EEOC charge. Another employee replied, "It's nice he waited to see the outcome of PSP investigation before he filed the EEOC claim (I am saying that quite sarcastically)." While these employees did not have authority to handle promotions, and thus this does not reflect animus on behalf of the Defendants directly, a reasonable factfinder could find this probative evidence that the "circumstances as a whole" reflect antagonism towards Plaintiff. *Daniels*, 776 F.3d at 196.

15

to them being time-barred, a factfinder could find them probative evidence of antagonism and animus. Numerous fact issues surround all of these allegations. For the drug test, there are disputes regarding whether Plaintiff was actually scheduled to be drug tested and if Christie had any knowledge of or involvement in it. Regarding the surveillance, the parties disagree over if the surveillance occurred on Christie's orders or if she found out about it after the fact; if there is an applicable nepotism policy in place that made it appropriate for Brown to look into Plaintiff working with his fiancé; and if Plaintiff or Brown first brought up Plaintiff's EEO complaints during their interactions. These incidents, which all occurred after Plaintiff filed his first EEO complaint, viewed in the light most favorable to the Plaintiff, support a pattern of antagonism. Plaintiff has therefore introduced sufficient evidence of causation and has made out a prima facie case.

### 2. Fact Issues Surround the Pretext Determination

Once a plaintiff has made out a *prima facie* case of retaliation, the burden shifts to the defendant to articulate "a legitimate, non-retaliatory reason for having taken the adverse action." *Daniels*, 776 F.3d at 193. Defendants offer one: Plaintiff was not promoted because he was not the best candidate for promotion. First, they discount Plaintiff's "outstanding" ratings on performance reviews, noting these were "typical" for all employees. Further, they note that Plaintiff had a disciplinary history; was not recommended by his supervisor for the February 2017 promotion; and was listed last on his supervisor's list of recommendations and received comparatively lukewarm recommendations for the June 2017 and February 2018 rounds of promotion. It was thus for those reasons he was not promoted. *See Jalil*, 873 F.2d at 707 (explaining that Defendants can assert qualifications as a legitimate reason for denying promotion). Defendants also argue that other employees who participated in EEO proceedings

were promoted, pointing to, for example, Lieutenant Dance.

The burden thus shifts back to Plaintiff, and merges with his ultimate burden of persuasion, to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (internal citations omitted). The plaintiff's burden to demonstrate pretext is to show that, based on the "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action," a reasonable factfinder *could* rationally find the explanation "unworthy of credence." *Id.* at 765 (internal quotations omitted). Because "Title VII retaliation claims must be proved according to traditional principles of but-for causation," requiring "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer, " at the pretext stage, Plaintiff must show that retaliatory motive was the but-for cause of retaliation. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Because pretext inherently requires weighing evidence, which is a matter for the factfinder, a plaintiff seeking to overcome a motion for summary judgment need only present enough evidence to create a genuine dispute as to if the defendant employer's legitimate reason was pretextual. *See Fasold*, 409 F.3d at 185.

There are significant fact issues surrounding pretext remaining in this case. Blocker and the Deputy Commissions rely on numerous factors in making promotion decisions, including the informal recommendations made by those below them; resumes; disciplinary history, "leadership skill," "practical experience," and "interpersonal skill and ability." Defendants do not deny that there are subjective elements to the decisions, and it is unclear how they weighed each factor.

And more saliently, to determine whether Plaintiff was deemed less qualified under a multi-factor promotion rubric that relies in part on subjective considerations would require deeming Blocker's and the Deputy Commissioners' testimony about their subjective opinions credible—and credibility determinations are a quintessential matter for the jury. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Plus, Plaintiff points to other evidence that could be indicative of pretext, namely the alleged promotion of a less qualified candidate who did not follow the correct procedures to apply for her promotion over him.[7] Summary judgment is thus not appropriate on these claims.

For the foregoing reasons, the Defendants' motion for summary judgment shall be partially granted and partially denied. An appropriate order follows.

**August 13, 2020**                                       **BY THE COURT:**

                                                          **/s/Wendy Beetlestone, J.**

                                                          ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
                                                          **WENDY BEETLESTONE**

---

[7] Specifically, Plaintiff alleges that, during the February 11, 2017, round of promotions, Defendants promoted a then-Sergeant to Lieutenant despite her not following the proper protocols. A Special Order was in place from July 1, 2015 to December 31, 2016 that required Sergeants seeking promotion to Lieutenant to, instead of taking the Lieutenant Promotion Exam, submit a resumé to indicate interest. The individual who was promoted did not submit a resumé. However, it is unclear if her promotion was decided upon in 2016 (before the Special Order expired), or what the process for promotions to Lieutenant was after the Special Order expired. According to Plaintiff, the fact that Defendants promoted someone who he asserts did not follow the correct procedure, while denying a promotion to him, further shows pretext. *Fuentes*, 32 F.3d at 765 (noting that contradictions and incoherencies can establish pretext). There is a genuine fact issue as to if any the other officer's promotion did in fact violate policy and what the process for promotions to Lieutenant looked like after the Special Order expired.

Finally, while the fact that other officers who filed and participated in EEO investigations were promoted *could* cast significant doubt on Plaintiff's claim, these are pieces of evidence to be weighed and questions to be considered by a factfinder.